# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3635 | **DATE** | 1/22/2002 |
| **CASE TITLE** | Syed Ahsan Iman vs. Illinois Institute Of Technology | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendant's motion to dismiss (Doc. No. 3-1) is denied. Defendant is directed to Answer or otherwise plead within 21 days.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JAN 23 2002 date docketed | 9 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 1/22/2002 date mailed notice | |
| ETV | courtroom deputy's initials | | ETV | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SYED AHSAN IMAM, a/k/a SID IMAM, | ) |
| Plaintiff, | ) |
| v. | ) No. 01 C 3635 |
| ILLINOIS INSTITUTE OF TECHNOLOGY, an Illinois not-for-profit corporation, | ) Judge Rebecca R. Pallmeyer |
| Defendant. | ) |

DOCKETED
JAN 23 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff Syed Ahsan Imam ("Imam"), also known as Sid Imam, brings this action against Defendant Illinois Institute of Technology ("IIT"). Imam, a citizen and subject of Pakistan, alleges that IIT has breached a contract with him. Imam claims IIT breached the parties' agreement by failing to award him course credits and an undergraduate architecture degree, a credential he alleges is worth at least $1,300,000. He seeks declaratory and injunctive relief as well as damages under this court's diversity jurisdiction. Defendant moves to dismiss Plaintiff's complaint for failure to state a claim. For the reasons set forth below, Defendant's motion is granted in part and denied in part.

## FACTUAL BACKGROUND

Plaintiff transferred to IIT and began taking undergraduate courses in the fall of 1992, after brief terms of study at Roosevelt University in Chicago and the College of Du Page in Glen Ellyn, Illinois. (Complaint ¶¶ 2-4, 14.) This controversy stems from ten IIT courses in 1994 and 1996, for which IIT refused to allow Plaintiff to register due to his failure to pay tuition. Although Plaintiff alleges that he attended

these classes, completed the course requirements, and earned passing grades, he received neither academic credit hours nor grades on his transcript.[1] (*Id.* ¶¶ 28-29; 12/5/97 Letter from Lee Waldrep, IIT Asst. Dean for Academic Affairs, Ex. H to Complaint; 12/30/98 Letter from Professor John Dygdon, Ex. D to Complaint; Imam Meeting Recap, Ex. I to Complaint.) Without credit for these courses, Plaintiff has earned no undergraduate degree; with the disputed credits, credits transferred from Plaintiff's prior studies, and credits earned at Triton College concurrently with his IIT studies, Plaintiff asserts that he has fulfilled Defendant's requirement of 168 credit hours for an undergraduate architecture degree.[2]

The details of the alleged contract between Plaintiff and Defendant are somewhat complex. Plaintiff alleges that IIT induced his transfer from the College of Du Page in June of 1992 with the following promises: (1) an annual scholarship of $7,090; (2) transfer credits for his past studies; (3) course availability sufficient to allow Plaintiff to graduate from IIT in three years; (4) permission to work on campus or off; (5) a letter during or after the completion of Plaintiff's course work, so that he could

---

[1] Plaintiff alleges a total of eighty-four completed IIT credit hours. The Complaint specifies neither how many credit hours have already been officially granted nor how many are in controversy in this case.

[2] Plaintiff alleges that he has earned 68.2 transferred credit hours, 27 hours for his studies at Triton College, and 84 hours for his completed courses at IIT, for an aggregate total of 179.2 credit hours. (*Id.* ¶¶ 9, 14, 15.) While it is apparently undisputed that Defendant granted Plaintiff 68.2 credit hours for his studies before attending IIT, Defendant argues that it never agreed to grant credit for Plaintiff's unregistered coursework or his studies at Triton. For purposes of this motion to dismiss, the court will interpret Plaintiff's allegation that he was "allowed to take some courses at Triton College" (*Id.* ¶ 15) as a claim that he was promised credit for successfully completed courses at Triton.

2

work and obtain training in architecture;³ (6) appropriate installment terms for payment of the balance of fees, if any remained unpaid; (7) the possibility of teaching opportunities with Plaintiff's earnings to be credited to his tuition fees. (*Id.* ¶¶ 6, 8, 9.) Plaintiff alleges that he accepted IIT's offer, and on September 28, 1992, signed a federal Certificate of Eligibility for Nonimmigrant (F-1) Student Status, which provided that IIT would give Plaintiff a $7,090 scholarship to defray his tuition, fees, living expenses, and miscellaneous personal expenses.⁴ (*Id.* ¶¶ 6A, 8; Certificate of Eligibility for Nonimmigrant (I-20) Student Status, Ex. A to Complaint.) The certificate stated further that Plaintiff's estimated annual debt would be $13,160 for the course of the program. (Ex. A.) Plaintiff adds that on May 6, 1994, IIT awarded him two additional scholarships worth a combined $2,333.33, and told him that the scholarship money would be credited to his tuition fees. (*Id.* ¶¶ 10-11; 1994 IIT Spring Open House Program and IIT Scholarship Certificates, Exs. B and C to Complaint.) Defendant highlights the absence of any written contract and denies that any contractual agreement was reached between the parties.

The alleged contractual breach and the ongoing interactions between the parties resist concise summary. After having his 1994 preregistrations cancelled for failure to pay tuition (12/30/98 Letter from Professor Dygdon to Architecture Dean Robertson,

---

³ The Complaint identifies neither the prospective author nor the intended audience of this letter.

⁴ Neither party has explained the legal effect, if any, of this document. The court infers that it pertains to INS authorization of a foreign national's study in the United States. Vanita Misquita of IIT signed the document on July 28, 1992, and Plaintiff signed in on September 28, 1992. The document reproduction given to the court does not indicate when or to whom the signed I-20 form was submitted.

3

Ex. D to Complaint), Plaintiff alleges that he subsequently believed he had paid his required tuition fees, only to be informed by IIT in January 1995 that his account was still deficient. (Complaint ¶ 18.) On or about February 3, 1995, Plaintiff requested an accounting of his outstanding tuition debts from John Dygdon, IIT's Director of the Division of Academic Services, but did not receive one. (*Id.* ¶ 21.) On the same date, Plaintiff petitioned the Academic Standing Committee for permission to enroll in Spring 1995 courses. (*Id.* ¶ 22; 2/3/95 Imam Student Petition, Ex. F to Complaint.) This petition states that Plaintiff is "expecting the funds will be available in April to cover [his] previous tuition expense . . . In the meantime [sic], I have made an agreement with the Bursar's office to pay $500 per month until the total dues [sic] are paid off–which I have already begun."[5] The Committee denied this petition without explanation. (*Id.* ¶ 23; Ex. F; 3/17/95 Letter from Carole Orze, Associate Director of Educational Services, Ex. G to Complaint.)

At an unspecified date after this denial, Dygdon advised Plaintiff to attend classes and complete the course work. (Complaint ¶ 26.) Apparently without formally registering, Plaintiff attended and completed coursework for at least one class in the spring of 1996. (Professor Gerald Horn Letter, Ex. K to Complaint.) On December 5, 1997, Lee Waldrep, Assistant Dean for Academic Affairs, informed Plaintiff that IIT could not consider his request for retroactive credit for the 1994 and 1996 classes until

---

[5] The complaint and attached exhibits do not reveal why Plaintiff was unable to pay his tuition obligations.

4

Plaintiff paid the $17,494.76 that he owed the University.[6] (12/5/97 Letter from Waldrep, Ex. H to Complaint.) Waldrep also asked that Plaintiff not contact anyone at IIT except the Bursar until this outstanding balance was paid off. (*Id.*; Complaint ¶ 31.)

Plaintiff alleges that at least two other arrangements were struck between him and IIT with regard to his unpaid tuition balance. In a letter dated December 30, 1998, Professor Dygdon indicated that there was a fall 1994 agreement that upon payment of all outstanding tuition and receipt of letters from all course instructors from the fall and spring 1994 courses, Plaintiff's grades would be formally recorded. (Complaint ¶ 19, Ex. D.) In a second arrangement, the University Bursar allegedly informed Plaintiff on November 5, 1997 that he owed IIT $14,000, but could receive credit for the 1994 and 1996 courses in question if he paid an initial $7,000. IIT would then add an additional $12,000 to Plaintiff's account to cover the ten courses in question, and he would be awarded his degree after he had paid at least 60% of the amount due and had entered into a payment plan for the balance. (Complaint ¶ 32; 11/12/97 Imam Recap of Meeting with IIT Bursar Bauhs, Ex. I to Complaint).

On March 3, 1998, Plaintiff paid IIT $7,000 of his outstanding balance. (Complaint ¶ 33.) It is unclear whether he believed himself to be complying with the December 5, 1997 letter from Waldrep, the November 5, 1997 conversation with the IIT Bursar, the 1994 arrangement summarized by Dygdon, or some combination thereof. On or about March 13, 1998, Waldrep and Dygdon informed Plaintiff that his

---

[6] Waldrep's letter does not itemize Plaintiff's debt.

debt should have been considered paid after the March 3, 1998 payment, and Waldrep advised Plaintiff to seek grades and an endorsement from the teachers of his 1994 and 1996 classes. (*Id.* ¶ 34.) On April 14, 1998, Plaintiff paid an additional $5,000 to Defendant. (*Id.* ¶ 35.) On April 24, 1998, Plaintiff sent Waldrep a letter that included grades and endorsements from the teachers of eight of the ten 1994 and 1996 courses in question. (*Id.* ¶ 36; Faculty Letters, Ex. K to Complaint; Imam Spring 1999 Petition for Academic Reinstatement, Ex. M to Complaint.) On June 10, 1998, Waldrep made an initial review of Plaintiff's credits and sent a memo to Carol Orze, Director of IIT's Office of Educational Services. (*Id.* ¶ 37; 6/10/98 Waldrep Memo to Orze, Ex. K to Complaint.) Plaintiff interprets this memo as a request to record credit for Plaintiff's uncredited courses, so that he could complete his program of study.[7] (Complaint ¶ 37.) On October 15, 1998, however, Gerald Saletta, Associate Dean of IIT's Undergraduate College, sent Plaintiff a letter denying his request that grades be included in his official transcript for courses that he had attended but did not register for. (*Id.* ¶ 38; Saletta Letter, Ex. L to Complaint.)

On January 10, 1999, Orze advised Plaintiff to apply to the Academic Standing Committee for reinstatement as a student and for posting of his course credits. (Complaint ¶ 39.) Plaintiff submitted a petition on January 18, 1999. (*Id.* ¶ 40; Imam

---

[7] The memo is susceptible to readings other than Plaintiff's. As submitted to the court, the memo is ambiguous, because it is unclear precisely what the writer is asking Orze to do. Waldrep writes that "there are some unique circumstances surrounding [Imam's] academic tenure, but I have made an initial review of this transcript and transfer credit to complete this program of study" before asking Orze to "process" Imam's Program of Study. The memo also notes that it encloses a Triton College transcript. Waldrep "leave[s] it to [Orze] to determine" if the Triton courses "are eligible to apply towards [Imam's] degree." (Ex. K.)

6

Petition, Ex. M to Complaint.) On January 25, 1999, the Committee granted Plaintiff conditional reinstatement into the College of Architecture for Spring of 1999, but explicitly stated that Plaintiff's "additional request to receive credit for which [he was] not formally registered has been denied." (Complaint ¶¶ 41-42; Orze Letter, Ex. N to Complaint.) Plaintiff filed this action on May 17, 2001.

## DISCUSSION

### A. Standard of Review

A motion to dismiss a complaint pursuant to FED. R. CIV. P. 12(b)(6) does not test whether the plaintiff will prevail on the merits but instead tests whether the claimant has properly stated a claim. *See Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1995) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). In deciding a motion to dismiss, the court will consider all well-pleaded allegations of the complaint as true, and will draw all reasonable inferences in favor of the plaintiff. *Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Tobin for Governor v. Illinois State Bd. of Elections*, 268 F.3d 517, 521 (7th Cir. 2001). Dismissal is only proper if it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Slaney v. International Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). A plaintiff can plead himself out of court, however, by pleading facts that undermine the allegations set forth in his complaint. *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). Documents attached to the complaint are incorporated into the plaintiff's pleadings. FED. R. CIV. P. 10(c). *See Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452-53 (7th Cir. 1998).

Because federal jurisdiction in this case is based on diversity of citizenship, the substantive rights of the parties are governed by the state law of Illinois. *See Erie R.R. Co. v. Tomkins*, 304 U.S. 64, 78 (1938); *Much v. Pacific Mut. Life Ins. Co.*, 266 F.3d 637, 643 (7th Cir. 2001). It is this court's duty to apply the law that it believes the Supreme Court of Illinois would apply if the case were before that tribunal rather than this court. *Much*, 266 F. 3d at 643. When "the state supreme court has not ruled on an issue, decisions of the state appellate courts control, unless there are persuasive indications that the state supreme court would decide the issue differently." *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999).

B.  **Plaintiff's Contract Claim**

Plaintiff's complaint alleges that Defendant has breached a contract on several grounds, including failing to credit Plaintiff's completed academic work, withholding a degree that Plaintiff earned by fulfilling Defendant's undergraduate requirements, and failing to provide proper installment terms for Plaintiff to pay off the balance of his tuition debt. Defendant notes that Plaintiff has not submitted any written contract to the court, and argues that Defendant can not have breached a contract that it never agreed to. Illinois case law suggests, however, that there is an implied contractual relationship between a student and the private university he or she attends. *See Brody v. Finch Univ. of Health Sciences/The Univ. of Chicago Med. Sch.*, 298 Ill.App.3d 146, 154, 698 N.E.2d 257, 265 (2nd Dist. 1998); *Johnson v. Lincoln Christian Coll.*, 150 Ill.App.3d 733, 739, 501 N.E.2d 1380, 1384 (4th Dist. 1986). Thus, the Fourth District Appellate Court held that

> The elements of a traditional contract are present in the implied

> contract between a college and a student attending that college, and are readily discernible. The student's tender of an application constitutes an offer to apply to the college. By 'accepting' an applicant to be a student at the college, the college accepts the applicant's offer. Thereafter the student pays tuition (which . . . constitutes sufficient consideration), attends classes, completes course work, and takes tests. The school provides the student with facilities and instruction, and upon satisfactory completion of the school's academic requirements (which constitutes performance), the school becomes obligated to issue the student a diploma.

*Lincoln Christian Coll., id.,* 501 N.E.2d at 1384. Accordingly, drawing all reasonable inferences in favor of Plaintiff, the court concludes that there was an implied contract between Plaintiff and Defendant. Under such a contract, a student may have a remedy for breach when it is alleged that an academic decision concerning the student is made arbitrarily, capriciously, and in bad faith. *Frederick v. Northwestern Univ. Dental Sch.,* 247 Ill.App.3d 464, 472, 617 N.E.2d 382, 387 (1st Dist. 1993); *Wilson v. Illinois Benedictine Coll.,* 112 Ill.App.3d 932, 937, 445 N.E.2d 901, 906 (2d Dist. 1983). Under this rigorous standard, parties must demonstrate that the challenged university conduct was "without any discernible rational basis." *Bilut v. Northwestern Univ.,* 269 Ill.App.3d 125, 135, 645 N.E.2d 536, 542-43 (1st Dist. 1994); *Frederick,* 112 Ill.App.3d at 471, 617 N.E.2d at 387.

Even assuming that there is an implied contract between the parties, Plaintiff has pleaded himself out of court on one issue. His own submissions demonstrate that Defendant has not breached any contractual agreement to provide an installment plan for the payment of unpaid tuition. In a document appended to his Complaint, Plaintiff summarized and claimed to have begun performing an agreement to pay $500 per month to Defendant's Bursar until Plaintiff's tuition debt was paid off. Plaintiff can

not allege before this court that he "was not given a plan to pay [his] deficit fees" (after telling Defendant that he "has made an agreement with the Bursar's office to pay $500 per month until the total [tuition is] paid off." (Ex. F). Perhaps Plaintiff intended to allege that Defendant has failed to honor other commitments in return for his payment. Nevertheless, the record here defeats Plaintiff's allegation that Defendant failed to provide an installment repayment plan. While the court must draw all reasonable inferences in favor of Plaintiff at this procedural juncture, it need not close its eyes to fundamental self-contradictions in his pleadings. *Slaney*, 244 F.3d at 597.

Plaintiff comes precariously close to undercutting the rest of his case as well. Under Illinois law, the elements of a breach of contract claim are (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of a contract by the defendant; and (4) resultant injury to the plaintiff. *Henderson-Smith & Assocs. v. Nahamani Family Serv. Ctr., Inc.*, 323 Ill.App.3d 15, 27, 752 N.E.2d 33, 43 (1st. Dist. 2001). Plaintiff's pleadings call the first two elements into question. First, it is far from clear that any contract between the parties is enforceable, because Plaintiff's pleadings give rise to the inference that the bargained-for consideration was never paid. Plaintiff alleges that by early 1995, he owed either no tuition or very little. (Complaint ¶ 24.) The pleadings appended to his Complaint, however, indicate that a) he acknowledged a tuition debt in a petition dated February 3, 1995 (Ex. G); b) he entered into a plan to repay the money he owed no later than February 3, 1995 (Ex. F); c) he subsequently attended and was graded for a class in 1996 (Ex. K), despite not having been able to register for the course; and d) Defendant's records in 1997 indicated that Plaintiff owed between $14,000 and $17,000 in unpaid tuition, even

before consideration of whatever tuition may have been due for the 1994 and 1996 classes. (Exs. H, I.) The court concludes, however, that notwithstanding the inferences that arise from these pleadings, Plaintiff still could establish facts showing that the implied contract was enforceable. If Plaintiff could show that he paid all the requisite tuition some time between April 3, 1995 and 1997, for example, or adduced evidence that Defendant's records of his tuition payments were incomplete or misleading, or that Defendant agreed to waive or grant a delay in certain tuition obligations, the contract might well be enforceable.

Similarly, Plaintiff's pleadings call the issue of his own contractual performance into question. In order to warrant an injunction requiring Defendant to grant him a degree, Plaintiff must show that he has taken and passed academic courses, deserves credit for his performance, has fulfilled the requisite number of credit hours for a degree from IIT, and has been denied the degree arbitrarily, capriciously, and in bad faith. Plaintiff's Complaint contains some thin allegations addressing these requirements, such as an assertion that he was "allowed" to take courses at Triton College. (Complaint ¶ 15.) His pleadings, on the other hand, indicate that a) he was not registered for any of the ten courses in question; b) he has not been able to obtain certifications of attendance or grades for two of the ten courses in 1994 and 1996 (Ex. K, Ex. M); (c) as of 1998, Defendant had not granted Plaintiff credit for his coursework at Triton College, and had not even determined whether such credit should be granted (Ex. K); and (d) Dean Waldrep's memo summarizing Plaintiff's Program of Study, a document which contemplates granting credit hours for some of the controverted 1994 and 1996 classes, still does not include enough credit hours to merit an undergraduate

11

degree even with the addition of the Triton course hours. (Ex. K)

Under the liberal standards applicable to a motion to dismiss, this court may not engage in premature fact-finding. Because it is at least theoretically possible that Plaintiff could demonstrate a set of facts showing that his conduct constituted performance of a contract, the court denies Defendant's motion for dismissal (Docket No. 3-1) on Plaintiff's plea for declaratory, injunctive relief and damages stemming from Defendant's refusal to grant Plaintiff either an academic degree or credit-hours for the 1994 and 1996 courses. Plaintiff's allegation that Defendant failed to provide installment terms for payment of outstanding tuition is stricken without prejudice.

ENTER:

Dated: January 22, 2002

REBECCA R. PALLMEYER
United States District Judge